**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CHARLES TAUNT,

       Trustee/Plaintiff,                    CASE NO. 07-12710
                                                                   PAUL D. BORMAN
-vs-                                                       UNITED STATES DISTRICT JUDGE

OAKWOOD UNITED HOSPITALS, et al.,

       Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND/OR MOTIONS FOR SUMMARY JUDGMENT

Before this Court are Defendants three separate Motions to Dismiss and/or Motion for Summary Judgment. On December 3, 2007, Defendants Oakwood Hospital, Monique Reeves, and Emergency Care, P.C., filed their Motion to Dismiss and/or Motion for Summary Judgment. (Doc. No. 17). On December 3, 2007, Defendants S. R. Kaura and Dix Eureka Medical Center filed their Motion to Dismiss and/or Motion for Summary Judgment. (Doc. No. 21). Also on December 3, 2007, Defendants Surekha Rao and Hueng Kim filed their Motion to Dismiss and/or Motion for Summary Judgment. (Doc. No. 20). On December 11, 2007, Defendants Oakwood, Reeves and ECP filed a joinder and concurrence in Co-Defendants' Motions to Dismiss and/or Motion for Summary Judgment based on judicial estoppel. (Doc. No. 23). On January 17, 2008, Plaintiff filed his collective response. (Doc. No. 24). On April 10, 2008, a hearing on these matters was held. For the following reasons, the Court GRANTS the Defendants Motions for Summary Judgment.

**I.      BACKGROUND**

A.   **Factual Background**

The present action is a civil action for damages for professional negligence and/or medical malpractice. (Compl. ¶¶ 8-9). Plaintiff, Charles Taunt, Trustee, has been appointed the permanent trustee in the matter of Raymond Robbins and Tammy Robbins (collectively "Debtors") in the Bankruptcy proceeding, 04-59712. (*Id.* ¶ 1). There is a pending bankruptcy matter, as this case was re-opened by order of this Court on January 9, 2007. (*Id.* ¶¶ 1-2). The current action is also an adversary proceeding.

Plaintiff contends that on February 21, 2004, Debtor Raymond Robbins was involved in a single-car, rollover accident caused by black ice. (*Id.* ¶¶ 19-20). Debtor Raymond Robbins was taken to Defendant Oakwood Hospital ("Oakwood") after the accident and claims to have informed all personnel at Oakwood that he had "trauma to his head, neck, and body". (*Id.* ¶ 21).

Emergency Medical Services took Mr. Robbins' medical history. (*Id.* ¶ 27). Defendant Reeves ordered a CT of the cervical spine and reviewed the results. (*Id.* ¶¶ 30-31). Defendants Surekha Rao and Hueng Kim also later reviewed the results of the CT exam and found it to be "normal." (*Id.* ¶¶ 38-39). On the same day, based on these interpretations, Mr. Robbins was discharged from Oakwood by Defendant Monique Reeves, with a diagnosis of cervical strain and abrasion of the forehead. (Compl. ¶ 34).

Plaintiff avers that Mr. Robbins sustained undiagnosed "acute traumatically-induced neck fracture and herniated disk together with spinal cord compression" and he was released with an "unstable broken neck." (*Id.* ¶ 46).

On February 23, 2004, Mr. Robbins visited his primary care physician, Defendant S.R. Kaura, at the location of his employer, Defendant Dix Eureka Medical Center. (*Id.* ¶ 26). Plaintiff

contends that Mr. Robbins complained to Defendant Kaura of pain, numbness, pressure in his chest, his hand had turned purple, he had suffered from body shakes, and he was in severe pain. (*Id*. ¶¶ 55-56). Plaintiff alleges Defendant Kaura did not provide rigid neck fixation, but did diagnose him as suffering from a ruptured disk at C5-6 and provided that he not work from February 23, 3004 through March 15, 2004. (*Id*. ¶¶ 53, 57).

On February 23, 2004, Mr. Robbins traveled to Wyandotte Hospital, at Defendant Kaura's direction, for an MRI test, however, the test could not be administered because Defendant Kaura failed to make adequate arrangements. (*Id*. ¶¶ 59-62). The physician at the hospital wanted to admit Mr. Robbins because of his symptoms, but Mr. Robbins was advised by Defendant Kaura that he did not need to be admitted to the hospital. (*Id*. ¶65). Mr. Robbins returned to Defendant Kaura on February 24, 2004, and received a prescription for an MRI test. (*Id*. ¶ 68). Plaintiff alleges that Mr. Robbins was contacted by Wyandotte Hospital and notified that the test could not be given because Defendant Kaura had failed to provide a proper reference number. (*Id*. ¶ 70).

Plaintiff contends Mr. Robbins made Defendant Kaura aware of MRI situation and was instructed to attend physical therapy at Defendant Kaura's office while awaiting an MRI. (Compl. ¶ 72).

On March 10, 2004, Mr. Robbins received an MRI test at Wyandotte Hospital. (*Id*. 74). Defendant Kaura was faxed the MRI evaluation on March 16, 2004. (*Id*. ¶ 75). On March 17, 2004, Defendant Kaura explained the MRI results to Mr. Robbins and instructed him to visit Dr. Bellazero a neurosurgeon at Wyandotte Hospital emergency room. (*Id*. ¶ 77). Mr. Robbins was also given a prescription for a Miami-9 cervical collar. (*Id*.).

Mr. Robbins went to Wyandotte Hospital to meet the neurosurgeon, however, the neurosurgeon did not attend the appointment. (*Id*. ¶ 78). Mr. Robbins was then instructed by personnel to go to Henry Ford Hospital. (*Id*. ¶ 79).

Mr. Robbins was provided a neurosurgical consultation at Henry Ford Hospital on March 18, 2004 by Konstanin Elisevich. (*Id*. ¶ 86). After interpreting the CT of the cervical spine, Dr. Elisevich found a "possible fracture at C6 with anterior subluxation of C5-6 and spinal cord compression." (*Id*. ¶¶ 87-88).

Mr. Robbins underwent surgery on July 26, 2004, "at which time a C5-6 anterior diskectomy with arthrodesis and plate and screw fixation at C5-6 was performed." (*Id*. ¶ 94).

Plaintiff alleges that Mr. Robbins has been diagnosed to be "totally and permanently disabled from further employment, to be permanently hemi paretic on the right side." (*Id*. ¶ 97).

B.   **Procedural Background**

On February 21, 2004, the Debtor, Mr. Robbins, was involved in a single car roll-over accident. February 21 and 23, 2004, Plaintiff alleges are the dates of loss or medical malpractice.

On July 13, 2004, Debtors filed bankruptcy pursuant to Chapter 7 of the United States Bankruptcy Code. Plaintiff Charles Taunt was appointed Trustee on July 19, 2004. On July 26, 2004, Debtor underwent surgery on his neck.

On August 11, 2004, the meeting of the creditors took place. A Report of No Distribution was filed by Plaintiff Trustee on August 17, 2004. On October 20, 2004, the bankruptcy court issued an Order discharging Debtors. On December 11, 2004, the final decree issued in the bankruptcy case, and the case was closed.

In November, 2004, Debtor became aware that he would be unable to recover sufficiently to return to work. (Plf. Br. at 2). Debtors sought the advice of counsel regarding social security benefits and were advised of a potential medical malpractice claim in November, 2004. (*Id.*). The medical malpractice claim was investigated but the attorneys turned down the case by letter in February, 2005. (Plf. Ex. 1, Letter from Counsel dated 2/22/05). This letter also advised Debtors of the statute of limitations of the medical malpractice claim. (*Id.*).

On November 16, 2005, Debtors sent Defendants a Notice of Intent pursuant to Mich. Comp. Law § 600.2912(b). On July 11, 2006, Debtors filed their state court complaint with Wayne County Circuit Court. On October 19, 2006, Defendants filed a Motion to Dismiss in the state proceeding. On December 13, 2006, Plaintiff Trustee motioned the bankruptcy court to reopen the Chapter 7 bankruptcy proceeding. On April 10, 2007, Wayne County Circuit Court dismissed the state court proceeding based on Debtors' lack of standing to bring the medical malpractice suit.

On May 18, 2007, the instant Complaint was filed by Plaintiff Trustee as an Adversary Proceeding.

## II. ANALYSIS

### A. Legal Standard

Pursuant to Fed. R. Bankr. P., 7012(b) and 7056, Fed. R. Civ. P. 12(b)(6) and 56(c) are applicable to Bankruptcy Adversary Proceedings. Defendant filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and in the Alternative Rule 56(c). A Rule 12(b)(6) motion alleges that a complaint has failed to state a claim upon which relief can be granted. In evaluating such a motion, the court construes the complaint in the light most favorable to the plaintiff, accepts all factual allegations in the complaint as true, and "should not [grant the motion]

unless is appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). "However, the Court need not accept as true legal conclusions or unwarranted factual inferences." *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). "If, on a [motion to dismiss] . . . . , matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgement and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to represent all material made pertinent to such a motion by Rule 56." FED. R. CIV. P 12(b).

Pursuant to Rule 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a

material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-1211 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment). "'[C]onclusory' allegations unsupported by 'specific' evidence will be insufficient to establish a genuine issue of fact." *Id.* (citations omitted); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990). Because Defendants rely upon evidence not included in the pleadings, the Court treats Defendants' Motion as a motion for summary judgment.

### B. Statute of Limitations

All Defendants argue that the statute of limitations has run on Plaintiff's medical malpractice claim. It is undisputed by the parties that Michigan law controls in this state law action and also controls the applicable statute of limitations. *See Erie R. Co. v. Tomkins*, 304 U.S. 64, 78 (1938).

The statute of limitations for medical malpractice in Michigan is two years from the date of accrual. Mich. Comp. Law § 600.5805(6). A medical malpractice claim "accrues at the time of the act omission that is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." Mich. Comp. Law. § 600.5838a(1). Plaintiff's claim against Defendants Oakwood, Reeves, ECP, Rao and Kim therefore accrued on February 21, 2004, and Plaintiff's claims against Defendants Karua and Dix Eureka accrued on February 23, 2004. Pursuant to the statute of limitations, Plaintiff must have filed suit by February 21 and February 23, 2006, respectively. The Debtors filed a Notice of Intent which extended the statute of limitations to August 22 and August 24, 2006. Mich. Comp. Law § 600.2912b. It is without dispute that this Adversary Proceeding was filed by Plaintiff on May 18, 2007, well outside the applicable statute of limitations.

Plaintiff argues that the statute of limitations was tolled with the filing of the original state action and the filing of the second suit relates-back to that time.

Plaintiff relies upon Mich. Comp. Law § 600.5856 and *Napier v. Hawthorn Books*, 449 F. Supp. 576 (E.D. Mich. 1978) for the proposition that the statute of limitations is tolled at the time

a suit is filed.[1] In *Napier*, the district court, applying Michigan law, relied upon the Committee Notes to Mich. Comp. Law § 600.5856 which stated:

> In the event of the dismissal, on some ground other than on the merits (as for example -- lack of jurisdiction over the subject matter) *of an action in which jurisdiction over the defendant is acquired*, the period of time from the time of service or the acquisition over the defendant until dismissal will not count as a part of the time of limitation, for during such time the statute has been tolled.[2]

*Id*. at 578 (emphasis in original). Plaintiff does not specify which subsection he relies upon for his argument.

Plaintiff asserts in conjunction with this theory that the date upon which the Plaintiff Trustee filed the instant claim "relates back" to the date the Debtors filed their state court complaint.

---

[1] Pursuant to Mich. Comp. Law § 600.5856, the statutes of limitations are tolled in any of the following circumstances:

> (a) At the time the complaint is filed, if a copy of the summons and complaint are served on the defendant within the time set forth in the supreme court rules.
> (b) At the time jurisdiction over the defendant is otherwise acquired.
> (c) At the time notice is given in compliance with the applicable notice period under section 2912b, if during that period a claim would be barred by the statute of limitations or repose; but in this case, the statute is tolled not longer than the number of days equal to the number of days remaining in the applicable notice period after the date notice is given.

[2] The Court notes that this case relies a previous version of § 600.5856 which stated:

> (1) the complaint is filed and a copy of the summons and complaint are served on the defendant, or when
> (2) jurisdiction over the defendant is otherwise acquired, or when
> (3) the complaint is filed and a copy of the summons and complaint in good faith, are placed in the hands of an officer for immediate service, but in this case the statute shall not be tolled longer than 90 days thereafter.

*Napier*, 449 F. Supp. at 578.

Plaintiff cites *Hayes-Albion Corp. v. Whiting Corp.*, 184 Mich. App. 410 (Mich. Ct. App. 1990) and *Affiliated Bank of Middleton v. American Ins*., Co., 77 Mich. App. 376 (Mich. Ct. App. 1974) for this argument. In *Hayes-Albion*, the Michigan Court of Appeals held,

> [w]here the original plaintiff had, in any capacity, an interest in the subject matter of the controversy, the defendant had notice of the interest of the person sought to be added as a plaintiff, and the new plaintiff's claim arises out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, then a new plaintiff may be added and the defendant is not permitted to invoke a limitations defense.

*Id.* at 418.

In *Affiliated Bank*, the Michigan Court of Appeals addressed a similar circumstance as the one at bar, where a trustee brought a claim against a defendant when the proper plaintiff was the bank which had been assigned the breach-of-contract action. 77 Mich. App. at 233. The suit the trustee initiated was dismissed and the plaintiff bank subsequently brought the action after the statute of limitations had expired. *Id*. The Michigan Court of Appeals held that it was undetermined whether the tolling statute, § 600.5856, was applicable when the "renewed action is instituted by someone other than the original plaintiff." *Id*. at 234. The Michigan Court of Appeals ultimately construed the statute to permit, "after failure of the original action commenced within the limitations period, a renewed action by a different plaintiff when he represents the same interest as the original plaintiff." *Id*.

Plaintiff therefore argues that that at the time the state suit was filed there remained 42 days in which to file the instant action. The filing of the state claim tolled the statute of limitations for the approximate nine months the state suit was pending and the Plaintiff Trustees' filing of the instant action relates-back to the filing date of the original state action.

The Court finds that Plaintiff's argument of tolling fails based on current Michigan law.

In the recent Supreme Court of Michigan case, *Miller v. Chapman Contracting*, 477 Mich. 102, (2007), a plaintiff's attorney improperly named an individual as the plaintiff rather than his bankruptcy trustee. After the statute of limitations expired, the attorney attempted to amend the complaint to add the bankruptcy trustee as a plaintiff, in response to defendants motion to dismiss the case for lack of standing. *Id*. at 104. The Supreme Court of Michigan expressly held that "the relation-back doctrine does not apply to the addition of new parties," and therefore the amendment was futile and properly denied. *Id*. at 106. Further, the court noted that the addition of the bankruptcy trustee as a plaintiff was not a correction of a misnomer but rather the "addition of a wholly new and different party." *Id*. at 107. Therefore, the court held that where a party seeks to substitute a trustee as the proper plaintiff in an action after the statute of limitations has expired, the amendment is futile and must be denied *because the statute of limitations has expired*.[3] *See Hall v. State Farm Mutual Auto. Ins*., 215 Fed. Appx. 423, 427, 428 n.2 (6th Cir. Jan. 29, 2007) (unpublished) (recognizing pursuant to Michigan law the "relation-back" doctrine does not extend to the addition of new parties.") (citing *Employers Mut. Casualty Co. v. Petroleum Equip*., 190 Mich. App. 57, 63 (Mich. Ct. App. 1991)).

---

[3] The Court recognizes that although Plaintiff has presented his arguments as two separate theories, (1) the tolling of the statute of limitations when a suit is filed and (2) the relation-back theory for the addition of new parties, such construction does not make any logical sense. This is true because, Michigan law clearly bars an improper plaintiff from adding the proper party after the statute of limitations has run and relating-back to the original date the suit was filed. Plaintiff's proposed construction would allow the proper plaintiff to file a new suit in the same court against the same defendants and rely upon the fact that the statute of limitations had been tolled with the improper plaintiff filed their claim. This result is illogical. Therefore, it appears implicit in the *Miller* decision that if relation-back doctrine does not extend to the addition of a proper plaintiff, it is because the statute of limitations has continued to run *despite* the filing of the original suit. *See Cotter v. Britt*, 2007 WL 1576386, *3 (Mich. Ct. App. May 31, 2007) (unpublished).

Further in *Cotter v. Britt*, 2007 WL 1576386, *1-3, the Michigan Court of Appeals found that where a medical malpractice suit was filed by a party who lacked standing, the fact the improper plaintiff had filed a suit did not operate to toll the statute of limitations pursuant to the tolling statute § 600.5856(a).

Although a harsh result, it is abundantly clear that pursuant to current Michigan case law, the statute of limitations was not tolled by the filing of the original action by a party without standing in state court, nor does the relation-back doctrine operate to allow Plaintiff's instant action to "relate-back" to the original filing date in state court.

C.  **Equitable Tolling**

Plaintiff makes the alternative argument that equitable tolling must apply in this case and prevent the application of the statute of limitations.

Plaintiff argues that equitable tolling is appropriate in this action where: (1) Defendants were on notice of the claims within the time period provided by the statute of limitation; (2) Plaintiff did not "sleep on his rights;" (3) the Debtors were without knowledge of the claim when they resolved the underlying bankruptcy case; and (4) there exists a compelling interest in the resolution of the case on the part of the creditors in the bankruptcy proceeding.

The Court holds that equitable tolling does not apply under these circumstances. In *Ward v. Siano*, 272 Mich. App. 715, 718 (2006), *rev'd on other grounds*, 741 N.W.2d 836 (Mich. Dec. 14, 2007) the Michigan Court of Appeals recognized:

> Equitable or judicial tolling ordinarily applies to a specific extraordinary situation in which it would be unfair to allow a statute of limitations defense to prevail because of the defendant's bad faith or other particular and unusual inequities. Absent statutory language allowing it, judicial tolling is generally unavailable to remedy plaintiff's failure to comply with express statutory time limits. Inequities

12

that justify tolling must arise independently of the plaintiff's failure to diligently pursue the claim in accordance with the statute.

The Michigan Supreme Court has also recognized that equitable tolling is usually "reserved for unusual circumstances such as fraud or mutual mistake." *Devillers v. Auto Club Ins. Ass'n*, 473 Mich. 562, 590 (2005).

In the present action, Plaintiff has failed to show, nor can the Court find any statutory language which allows for the judicial tolling of the express time limits of a medical malpractice claim. Further, Plaintiff has failed to show any inequities which arise separately from Plaintiff's failure to timely file this suit. Plaintiff did not fail to file the suit in time due to fraud by Defendant nor by any other "intentional or negligent conduct designed to induce a plaintiff from bringing a timely action." *Id*. (citation omitted). For these reasons, the Court abstains from using its discretion to equitably toll the statute of limitations in the present action.

### D. Extension pursuant to 11 U.S.C. § 108(A)

Defendants argue that Plaintiff is not entitled to a extension of time in which a Trustee may file an Adversary Proceeding pursuant to 11 U.S.C. § 108(A). As Plaintiff has failed to address or rebut the argument, the Court finds that there is no genuine issue of material fact as to whether an extension applies pursuant to the statute.[4]

## IV. CONCLUSION

For the following reasons, the Court **GRANTS** Defendants' Motions to Dismiss and/or Motions for Summary Judgment.

---

[4] For the reasons discussed above, there is no reason to reach Defendants' arguments regarding res judicata and judicial estoppel. However, it is clear that because the state court dismissed the case based on lack of standing and not because of the statute of limitations, res judicata is not applicable.

**SO ORDERED**.

                                                       s/Paul D. Borman
                                                       PAUL D. BORMAN
                                                       UNITED STATES DISTRICT JUDGE

Dated: May 2, 2008

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on May 2, 2008.

                                                         s/Denise Goodine
                                                       Case Manager